DA 08-0453

**FILED**

May 19 2009

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA


# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2009 MT 169

IN RE THE MARRIAGE OF

AMBER GUFFIN, f/k/a AMBER
PLAISTED-HARMAN,

      Petitioner and Appellant,

  and

THOMAS PLAISTED-HARTMAN,

      Respondent and Appellee.

APPEAL FROM:    District Court of the Seventh Judicial District,
In and For the County of Prairie, Cause No. DR-08-01
Honorable Richard A. Simonton, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Jeff A. Turner; Towe, Ball, Enright, Mackey & Sommerfeld,
Billings, Montana

      For Appellee:

            Sheila M. Newman; Lucas & Tonn, Miles City, Montana

Submitted on Briefs:  April 22, 2009

Decided:  May 19, 2009

Filed:

          _____
                          Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1      Amber Guffin (Amber) appeals from the August 21, 2008, Findings of Fact, Conclusions of Law and Order Amending Parenting Plan, entered by the District Court of the Seventh Judicial District, Prairie County.  We reverse.

¶2      Amber presents the following issue for review:  Whether the District Court erred in entering a modified parenting plan changing the primary custody of the children from her to Thomas on the ground that she was moving to Kalispell and was therefore required to pay the price of reduced parental contact with the children.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3      Amber and Thomas were married in Kalispell, Montana, in November, 2001 and have two children born in 2001 and 2005.  The parties had spent their lives in Kalispell until they moved to Terry, Montana in February, 2006 so that Thomas could take an over-the-road trucking job.  The trucking job kept Thomas away from home for much of the time.  In November, 2007, Thomas quit the trucking job and took a job managing a ranch in Ekalaka, Montana, a two-hour drive from Terry, where Amber stayed with the children.

¶4      The parties divorced in a joint pro se proceeding in February, 2008.  They agreed to a joint parenting plan approved by the District Court under which Amber was the primary custodian of the children, and Thomas had visitation on alternate weekends, and during the summer and holidays.  Subsequently Amber decided to return to Kalispell.

2

¶5 Thomas then filed a petition to modify the parenting plan to award him primary custody of the children. After a hearing, the District Court entered its order amending the parenting plan to make Thomas the primary custodial parent. The primary ground for the decision was that Amber decided to move to Kalispell and so "should be the one who pays the price of reduced parental contact." Amber appeals.

## STANDARD OF REVIEW

¶6 A district court's findings of fact are reviewed to determine whether they are clearly erroneous. *In the Matter of the Custody of D.M.G.*, 1998 MT 1, ¶ 10, 287 Mont. 120, 951 P.2d 1377. We will not overturn the decision unless there has been a clear abuse of discretion. *In the Matter of the Marriage of Czapranski*, 2003 MT 14, ¶ 10, 314 Mont. 55, 63 P.3d 499. Our review of conclusions of law is plenary. *D.M.G.*, ¶ 10.

¶7 A district court is required to determine child custody matters in accordance with the best interests of the child, considering a variety of statutory factors. Section 40-4-212, MCA; *Czapranski*, ¶ 11.

## DISCUSSION

¶8 The District Court's order amending the parenting plan found that either of the parents would be fit to care for the children. The court found that Amber had "legitimate reasons" to return to Kalispell, including employment and the support of an extended family. The express reason for the District Court's decision to change the parenting plan to make Thomas the primary custodial parent was Amber's "decision to move 700 miles across the state . . . ." The District Court stated, in the Conclusions of Law: "[I]t is this

3

Court's opinion that the parent affecting the other parent's relationship with the children should be the one who pays the price of reduced parental contact."

¶9 The District Court's decision to amend the parenting plan based on Amber's move to Kalispell necessarily implicates the important constitutional issue of the right to travel. In *D.M.G.*, the district court had designated the mother as the primary custodian of the children, but only if she returned from Oregon to live in Montana. As in the present case, the court had found that both parents were fit to have custody of the children. This Court reversed because the district court's order violated the mother's fundamental right of interstate travel protected under the United States Constitution.

> [T]he custodial parent who bears the burdens and responsibilities of raising the child is entitled, to the greatest possible extent, to the same freedom to seek a better life for herself or himself and the children as enjoyed by the noncustodial parent. In the context of this case . . . Tammy has a fundamental, though qualified, constitutional right . . . "to migrate, resettle, find a new job, and start a new life." Moreover, given that Tammy enjoys this fundamental constitutional right, Michael bears a heavy burden to demonstrate a compelling interest on the part of the state (here, the court) to interfere with this right.

*D.M.G.*, ¶ 31 (citations omitted).

¶10 The constitutional right of interstate travel has been recognized in a number of decisions as a basic freedom. *Memorial Hospital v. Maricopa County*, 415 U.S. 250, 254, 94 S. Ct. 1076, 1080 (1974). The right is not derived from any express guarantee in the Constitution, but is deemed to be "a right so fundamental and elementary that it was conceived from the beginning 'to be a necessary concomitant of the stronger Union the Constitution created.'" *D.M.G.*, ¶ 12, quoting *United States v. Guest*, 383 U.S. 745, 758, 86 S. Ct. 1170, 1178 (1966). Because the federal right to interstate travel is fundamental,

4

a restriction that penalizes persons who exercise the right must be justified by a compelling state interest. *D.M.G.*, ¶ 12; *Memorial Hospital*, 415 U.S. at 258, 94 S. Ct. at 1082; *In the Matter of the Marriage of Cole*, 224 Mont. 207, 213, 729 P.2d 1276, 1280-81 (1986).

¶11    The only material difference between the present case and *D.M.G.*, is that it involves intrastate travel within Montana, and not interstate travel. The federal decisions confirming the right of interstate travel have expressly not decided whether intrastate travel is part of the same right. *Memorial Hospital*, 415 U.S. at 255-56, 94 S. Ct. at 1081. However, the protected right to travel has been broadly described:

> For all the great purposes for which the Federal government was formed, we are one people, with one common country. We are all citizens of the United States; and as members of the same community, must have the right to <u>pass and repass through every part of it without interruption, as freely as in our own States</u>.

*Passenger Cases*, 7 How. 283, 492 (1849) (emphasis added) (quoted in *Shapiro v. Thompson*, 394 U.S. 618, 630, 89 S. Ct. 1322, 1329 (1969), *overruled on other grounds*, *Edleman v. Jordan*, 415 U.S. 651, 94 S. Ct. 1347 (1974)). It is difficult to conceive that the right to travel protected by the United States Constitution does not include a right to freely travel within each of the states. The right to travel between states would mean little if a person did not also have the right to travel within a state after crossing its borders. We hold, therefore, that the right to travel guaranteed by the United States Constitution includes the right to travel within Montana.

¶12    This right to intrastate travel is the same right that Thomas exercised when the family moved to Terry so that he could take a trucking job, and the same right that he

exercised when he moved to Ekalaka to work on the ranch. Amber has no less a right to move to pursue her life goals than Thomas had to pursue his. The District Court may not penalize Amber for exercising her right to travel by removing her as the primary custodial parent of the children, and it was an abuse of discretion to do so. Any decision as to the custody of the children must be based upon a careful examination of what is in their best interests. *In the Matter of the Marriage of Robinson*, 2002 MT 207, ¶ 20, 311 Mont. 246, 53 P.3d 1279.

¶13 Reversed and remanded for further proceedings consistent with this opinion.


/S/ MIKE McGRATH

We concur:

/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER
/S/ BRIAN MORRIS
/S/ JAMES C. NELSON