DA 19-0276

FILED

06/16/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 19-0276

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2020 MT 158N

IN RE THE MARRIAGE OF:

HEIDI L. KERR,

        Petitioner and Appellee,

   and

THOMAS D. KERR,

        Respondent and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DR-17-886
Honorable Karen S. Townsend, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Thomas D. Kerr, Self-Represented, Missoula, Montana

      For Appellee:

          André Gurr, Garden City Law, PLLC, Missoula, Montana

                   Submitted on Briefs:  March 4, 2020

                            Decided:  June 16, 2020

Filed:

                           _____
                                    Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1      Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2      Thomas Kerr (Tom) appeals from an order of the Fourth Judicial District Court, Missoula County, regarding division of marital assets, child support, parenting plan, spousal maintenance, and attorney fees. We affirm.

¶3      This case involves a highly contentious dissolution of marriage between Tom and his wife of 16 years, Heidi Kerr (Heidi). The couple have three minor children, J.L.K. (13 years of age); W.D.K. (12 years of age); and C.T.K. (12 years of age). The parties were married in Los Angeles County, California, in 2002, and continued to live there until Tom moved to Missoula, Montana, in 2014 for work. Heidi and the children followed to Missoula in June 2015. Tom is 55 years old and has an employment history of working as an investment manager in California and later in Missoula at S.G. Long Finance. Tom lost his job with S.G. Long Finance in October 2018, and was still unemployed at the time of the District Court proceedings. He received a promise for a satisfactory recommendation upon his leaving S.G. Long Finance and was given $50,000 in severance pay. Heidi is 50 years old. She earned a Bachelor of Science in Exercise Science in 1992, and a credential in Adapted Physical Education in 1999. Heidi

2

worked as a physical education teacher in California prior to the family decision that she stay home when J.L.K. was born. She has since primarily worked as a stay-at-home mother. Heidi previously had a dog training business, Heidi Paws, while living in California, and has also been a licensed massage therapist. At the time of the District Court proceedings Heidi was employed at the Humane Society, working 32 hours per week at $12.25 per hour. Her California teaching credentials had lapsed at the time of the proceedings.

¶4 The parties separated on December 7, 2017, although they continued to reside in the family home until Heidi secured separate housing in May 2018. Also on December 7, 2017, Heidi filed a Petition for Dissolution of Marriage, to which Tom responded. Initial proceedings were conducted before a Standing Master who issued an Order for Temporary Child Support on February 22, 2018; the Standing Master eventually issued a Revised Order upon Tom's request for review. The matter was later referred to the District Court on April 18, 2018. The District Court set a hearing on Tom's request to review the Standing Master's orders but continued that hearing upon request of the parties to pursue settlement. After a settlement conference on August 17, 2018, the parties did not entirely settle, but did reach a Stipulation on an Interim Parenting Plan and on Child and Family Support. Following the report of the Settlement Master, the District Court held a hearing on November 7 and 8, 2018, to resolve the remaining issues in Tom's review request, including ruling on the Order for Family Support and the Order for Temporary Child Support, in addition to deciding on

the distribution of the parties' marital assets. The parties stipulated that the testimony of Dr. Sara Baxter, who had completed an earlier parenting evaluation, could be received from Dr. Baxter's deposition testimony as she was unavailable on the hearing dates.

¶5 Following the hearing, but before the District Court issued its findings and conclusions, Heidi filed a motion for the sale of the family home on April 3, 2019. Tom responded, agreeing to the sale but making several demands for deductions from the sale proceeds to settle outstanding credit card debts before the remainder was divided between the parties. The District Court held a hearing on Heidi's motion on April 10, 2019. On April 18, 2019, the court issued a single order on both the November 2018 and April 2019 hearings.

¶6 The District Court made thorough findings and conclusions regarding the dissolution, parenting plan, child support, spousal maintenance, and attorney fees. Based in large part on Tom's superior earning capacity, the "extreme" conflict between the parties, and the extensive support group and financial opportunities available in California, the District Court permitted Heidi to move back to California with the children; adopted Heidi's proposed parenting plan; awarded Heidi an equitable portion of the marital estate; ordered Tom to pay $615 per child per month ($1,844 total per month) in child support and $1,500 per month in maintenance to Heidi for 6 years; and ordered Tom to pay Heidi's attorney fees pursuant to § 40-4-110, MCA. Tom appeals, alleging the District Court made numerous errors in its order, namely by allowing Heidi to move to California with the children; erroneously calculating Tom's historical earning capacity,

4

Heidi's maintenance award, and the child support amount; and ordering Tom to pay Heidi's attorney fees. Both parties were represented by counsel in the District Court proceedings, though Tom now represents himself in this appeal.

¶7 This Court reviews a district court's findings of fact regarding parenting plans, division of marital property, child support, and maintenance awards to determine whether they are clearly erroneous. *In re C.J.*, 2016 MT 93, ¶ 12, 383 Mont. 197, 369 P.3d 1028; *Paschen v. Paschen*, 2015 MT 350, ¶ 17, 382 Mont. 34, 363 P.3d 444. A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the district court misapprehended the effect of the evidence, or if our review of the record convinces us that the district court made a mistake. *In re C.J.*, ¶ 12.

¶8 We first address Tom's argument that the District Court erred by permitting Heidi to relocate to California with the children. A district court has "broad discretion when considering the parenting of a child, and we must presume that the court carefully considered the evidence and made the correct decision." *In re C.J.*, ¶ 13 (quoting *In re Marriage of Woerner*, 2014 MT 134, ¶ 12, 375 Mont. 153, 325 P.3d 1244). Accordingly, absent clearly erroneous findings, we will not disturb a district court's decision regarding parenting plans unless there is a clear abuse of discretion. *In re C.J.*, ¶ 13. Although district courts have broad discretion when considering the parenting of a child, a district court must determine the parenting plan in accordance with the best interests of the child, pursuant to § 40-4-212(1), MCA. *In re C.J.*, ¶ 14. The statute includes a non-exhaustive list of factors that district courts are directed to consider

in making a best interest determination. *See* § 40-4-212(1), MCA. Although district courts are encouraged to make specific findings on each factor listed in § 40-4-212(1), MCA, "we require only 'that the district court make findings sufficient for this [C]ourt to determine whether the court considered the statutory facts and made its ruling on the basis of the child's best interests.'" *In re C.J.*, ¶ 14 (quoting *Woerner*, ¶ 15).

¶9 Upon review of the record, and the District Court's findings relative to the best interest factors in § 40-4-212(1), MCA, we hold that the District Court did not misapprehend the effects of the evidence or clearly err in finding that it was in the children's best interests to move to California with Heidi. Tom raises several arguments condemning the authenticity of Heidi's California support group and the viability of the employment opportunities available to Heidi in California, facts upon which the District Court relied in making its determination. The District Court found that the children would likely easily adjust to a move back to California, given their support network of extended family and old friends, and their familiarity with the locale. Heidi has been the children's primary caretaker and the coordinator of school, activities, and medical/therapy appointments, and is adept at managing their day-to-day care. Heidi has acted not only as the children's activities coordinator but also as their source of nurturance and affection. She provides the children with predictability, support, and was found by the District Court to be "more skilled and gifted in providing nurturance and empathy." Further, the court noted Dr. Baxter's evaluation recognizing "Tom's obvious

6

struggles with empathy." The District Court's findings were based on an analysis of the factors presented in § 40-4-212(1), MCA, and the record supports those findings. Given the District Court's broad discretion in determining parenting plans, we will not disturb the court's decision absent a clear abuse of that discretion. Based on a review of the record, the District Court did not err by adopting Heidi's proposed parenting plan and permitting Heidi to move with the children to California.

¶10 Tom next argues that the District Court erred in its determination of Tom's earning capacity, an error which Tom alleges was compounded because this "unrealistic and unobtainable" earning capacity was then used to determine other financial aspects of the case, including equitable division of the marital assets, spousal maintenance, and child support.

¶11 The distribution of marital property in dissolution proceedings is governed by § 40-4-202, MCA, under which a trial court is vested with broad discretion to distribute the marital property in a manner that is equitable to both parties. When dividing marital property, the trial court must reach an equitable distribution, not necessarily an equal distribution. A district court's apportionment of the marital estate will stand unless there has been a clear abuse of discretion as manifested by a substantially inequitable division of the marital assets resulting in substantial injustice. *Paschen*, ¶ 16.

¶12 There is no evidence in the record that the District Court made an error in its determination of Tom's earning capacity. Despite Tom's "evasive" and "not as direct" responses to questions regarding his financial position and job prospects, Tom's earning

capacity was calculated by using his past earning record and social security statements. Following hearings, numerous exhibits, and extensive witness testimony, the District Court equitably divided the marital estate, entering a 61-page order based upon thorough findings which considered the criteria required in § 40-4-202, MCA, including: the length of the marriage (16 years); the parties' ages (55 and 50, respectively); the parties' high standard of living during the marriage; Heidi's contributions as a homemaker and primary caretaker of the children; Heidi's income ($12.25 per hour); the lapsing of Heidi's teaching credentials; the parties' "extreme" level of conflict; Tom's practice of maintaining a high standard of living through use of credit cards; the parties' stipulated values of assets and debts; Tom's severance package from S.G. Long Finance; Tom's financial support from family; Tom's dissipation of retirement accounts; and much more.

¶13 Given the thorough fact-finding engaged in by the District Court, and upon our examination of the record, we find that the District Court did not err in its calculation of Tom's earning capacity, or in its calculation of an equitable division of the marital assets. "As we have frequently stated, 'It is not this Court's function, on appeal, to reweigh conflicting evidence or substitute our evaluation of the evidence for that of the district court.'" *Paschen*, ¶ 42 (quoting *State v. Bieber*, 2007 MT 262, ¶ 23, 339 Mont. 309, 170 P.3d 444). Where, as here, the District Court bases its findings on substantial evidence, we will not disturb its ruling. The District Court did not err in

determining Tom's earning capacity; nor did the court err in dividing the marital assets based, in part, on the correctly calculated earning capacity of Tom.

¶14 As to the calculation of spousal maintenance and child support, we find no error with the District Court's findings, as those findings were supported by substantial credible evidence. Section 40-4-203(2), MCA, requires the court to consider, among other factors, the financial resources of the party seeking maintenance as well as the "ability of the spouse from whom maintenance is sought" to meet his or her own needs and the maintenance request of the other party. *Paschen*, ¶ 21. With respect to child support, § 40-4-204(2), MCA, obligates the court to consider "all relevant factors," including the financial resources of the child and the parents, as well as the child's standard of living had the parents not gotten divorced. *Paschen*, ¶ 21. Upon review of the facts in the record, there is ample evidence supporting the District Court's findings regarding spousal maintenance and child support. The District Court did not err in making these determinations.

¶15 Finally, Tom argues that the District Court erred by awarding attorney fees to Heidi. We disagree. "An award of attorney fees under § 40-4-110, MCA, is within the sound discretion of the trial judge, and the trial judge's determination regarding attorney fees will not be disturbed absent an abuse of discretion." *Schmieding v. Schmieding*, 2000 MT 237, ¶ 22, 301 Mont. 336, 9 P.3d 52. To determine whether an award of attorney fees was appropriate pursuant to § 40-4-110, MCA, we consider whether the award was: (1) based on necessity; (2) reasonable; and (3) based on competent evidence.

*Schmieding*, ¶ 25. First, Heidi clearly demonstrated her inability to pay her own attorney fees, given her $12.25 per hour part-time job, and attorney fees totaling more than $20,000. The District Court did not err in finding that this income amount was not adequate to satisfy Heidi's living expenses, must less her attorney fees. Tom's own representations at trial admitted his high earning capacity and concomitant ability to pay Heidi's attorney fees. Second, given the parties' earning capacity, it was reasonable for the court to conclude that Tom can absorb the cost of Heidi's attorney fees. Lastly, the award was based on competent evidence that Tom's economic situation was much better than Heidi's, and that he should therefore be required to pay her attorney fees. As a whole, the District Court's findings adequately support its award of attorney fees. *Schmieding*, ¶ 34. Tom failed to show that the District Court abused its discretion in this regard.

¶16 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. This appeal presents no constitutional issues, no issues of first impression, and does not establish new precedent or modify existing precedent.

¶17 Affirmed.

/S/ LAURIE McKINNON

We concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ DIRK M. SANDEFUR
/S/ JIM RICE