FILED

07/25/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0725

DA 22-0725

IN THE SUPREME COURT OF THE STATE OF MONTANA

2023 MT 144N

IN RE THE PARENTING OF M.M.G.:

ELISE M. GUEST,

      Petitioner and Appellee,

  v.

PAUL R. MANNELIN,

      Respondent and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
                  In and For the County of Missoula, Cause No. DR-22-135
                  Honorable Jason Marks, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Misty D. Gaubatz, Judnich Law Office, Missoula, Montana

      For Appellee:

            Jane E. Cowley, Riley M. Wavra, Laird Cowley, PLLC, Missoula, Montana

Submitted on Briefs:  May 3, 2023

Decided:  July 25, 2023

Filed:

                          _____
                                  Clerk

Justice Dirk Sandefur delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, we decide this case by memorandum opinion. It shall not be cited and has no precedential value. The case title, cause number, and disposition shall be included in our quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2     This case involves a disputed final parenting plan regarding M.M.G.,[1] a child born in June 2020 to unmarried parents Elise Guest (Mother) and Paul Mannelin (Father). Father appeals the judgment of the Montana Fourth Judicial District Court, Missoula County, filed November 18, 2022. We affirm in part, reverse in part, and remand for entry of a revised final parenting plan in accordance with this Opinion.

¶3     Upon her birth, Mother and Father jointly parented M.M.G. as a couple until their relationship ended in Fall 2021. Beginning in January 2022, the parties split parenting time under a de facto parenting plan, with Mother as M.M.G.'s primary custodian and Father caring for her every other weekend. Father was and remains employed as a ski instructor in Big Sky, Montana, where he has generally resided during the 6- to 7-month winter season. During the off-season, typically May through October, Father has generally resided in Missoula, Montana. Mother generally resides in Missoula year-round. During the ski season, Father frequently drives the four-hour trip from Big Sky to Missoula on

---

[1] At the commencement of proceedings in March 2022, the child's name was M.M. At the 2022 bench trial, Mother requested that the child's name be legally changed to include Mother's last name in addition to Father's last name. Upon hearing, the District Court granted the request and ordered the child's legal name be changed to M.M.G.

2

Fridays, picks up M.M.G. and returns to Big Sky for the weekend, and then drives back to Missoula on Sunday to return her to Mother.

¶4    In March 2022, Mother petitioned the District Court for a formal parenting plan and child support determination. Following a contested bench trial in November 2022, the District Court issued comprehensive findings of fact, conclusions of law, and a resulting judgment imposing the disputed final parenting plan.[2] In pertinent part, the parenting plan designates Mother as M.M.G.'s primary residential custodian and established a two-part parenting schedule based on Father's winter employment and residential schedule. From April through October, the plan places M.M.G. in Father's care on the first and third weekends of each month, and on the second weekend each month from November through March. The plan provides for shifting of Father's allotted weekend time due to poor winter traveling conditions based on an official "winter storm warning or travel restriction on the route between Missoula and Big Sky." The initial schedule is in effect until M.M.G. turns five years old, and thereafter when Father lives in the Big Sky area. The plan also requires each parent to purchase and maintain a $100,000 life insurance policy, with the other parent

---

[2] The District Court mistakenly included "Petitioner's Proposed" language in the caption of its written judgment and in the footer of the resulting final parenting plan document. At the close of trial, the court stated that Father's proposed parenting plan was "not reasonable or realistic" for such a young child and thus indicated that it would use Mother's proposed plan as a template for the plan contemplated on the trial evidence. While we again "caution[] against" the "wholesale adoption of a party's findings and conclusions," the ultimate "test for adequacy" of lower court findings of fact and conclusions of law is whether the conclusions and applications of law are correct and whether findings of fact are supported by the record evidence presented and sufficiently comprehensive regarding the pertinent legal criteria for the decision. *In re Marriage of Williams*, 2018 MT 221, ¶ 21, 392 Mont. 484, 425 P.3d 1277 (citation omitted); *In re Marriage of Allison*, 269 Mont. 250, 265, 887 P.2d 1217, 1226 (1994).

as the named beneficiary, to help support M.M.G. in the event of the insured parent's death before she turns 18. The plan separately includes a "counseling" provision requiring the parties to first attempt to resolve any parenting plan dispute through a third-party before resorting to the district court for judicial dispute resolution. The plan referred the parties to the Montana Department of Public Health and Human Services Child Support Services Division (CSSD) for an administrative child support determination. Father timely appeals.

¶5 District courts have broad discretion to make parenting plan determinations under the applicable standards of §§ 40-4-212, -233, and -234, MCA. *See Bessette v. Bessette*, 2019 MT 35, ¶ 13, 394 Mont. 262, 434 P.3d 894 (citation omitted). We review parenting plan determinations for a clear abuse of discretion. *Bessette*, ¶ 13 (citations omitted). A court abuses its discretion if it exercises its discretion "based on a clearly erroneous finding of fact, an erroneous conclusion or application of law, or [it] otherwise acts arbitrarily, without employment of conscientious judgment, or exceeds the bounds of reason resulting in substantial injustice." *Bessette*, ¶ 13 (internal punctuation and citation omitted). A supporting finding of fact is clearly erroneous only if not supported by substantial evidence, the court misapprehended the effect of the evidence, or we are definitely and firmly convinced on our review of the record that the lower court was otherwise mistaken. *Bessette*, ¶ 13 (citation omitted). We review lower court conclusions and applications of law, including conformance to applicable statutory requirements, de novo for correctness. *Bessette*, ¶ 13 (citation omitted).

¶6 Father first asserts that the District Court erroneously imposed a parenting plan that was contrary to the child's best interests because his allotted one weekend per month parenting time during his winter employment/residential schedule is less than under the prior de facto plan (two weekends per month), and similarly less than both parents testified as ideal. He further asserts that the final parenting plan is inconsistent in various regards with the District Court's supporting findings of fact. District courts must make initial parenting plan determinations based on the best interests of the subject child, upon consideration of "all relevant parenting factors" including the non-exhaustive factors enumerated in § 40-4-212, MCA, as pertinent on the evidence presented. *Woerner v. Woerner*, 2014 MT 134, ¶ 13, 375 Mont. 153, 325 P.3d 1244 (quoting § 40-4-212, MCA). While § 40-4-212, MCA, does not necessarily require specific findings on each enumerated factor, *Woerner*, ¶ 15 (citations omitted), the court must nonetheless at least "express the essential and determining facts upon which it rests" its decision. *Lorenz v. Lorenz*, 242 Mont. 62, 68, 788 P.2d 328, 332 (1990) (internal punctuation and citation omitted).

¶7 Here, the District Court explicitly noted several statutory parenting factors it considered when crafting the final parenting plan including, *inter alia*, the wishes of the parents, the child's interaction and relationship with each parent and others, the child's adjustment to the circumstances under the parties' prior de facto parenting arrangement, the past and prospective continuity and stability of the child's care, and the child's developmental needs. *See* § 40-4-212(1)(a)-(d), (h)-(i), (l), MCA. Regardless of whether the evidence may have supported different findings of fact, or a different resulting

5

parenting time allocation, our record review indicates that the court's pertinent findings were supported by substantial evidence, and not otherwise clearly erroneous. Nor has Father demonstrated that the court's exercise of parenting plan discretion either was based on an erroneous conclusion or application of law, or was otherwise arbitrary or lacking in conscientious judgment. Under the record circumstances at issue, we hold that the District Court did not abuse its discretion in allocating parenting time and responsibility between the parties under § 40-4-212, MCA.

¶8 Father next asserts that the unsafe travel provision, shifting a scheduled parenting weekend to the following weekend when "actual or forecasted weather conditions make travel unsafe" based on an official "winter storm warning or travel restriction on the route between Missoula and Big Sky," violates his fundamental constitutional right to travel. Custodial parents generally have a federal constitutional right to travel freely "throughout the United States" with their children, including the right "to migrate, resettle, find a new job, and start a new life," *inter alia*. *In re M.C.*, 2015 MT 57, ¶ 12, 378 Mont. 305, 343 P.3d 569 (internal punctuation omitted—quoting *Shapiro v. Thompson*, 394 U.S. 618, 629-31, 89 S. Ct. 1322, 1328-29 (1969), *overruled in part on other grounds by Edelman v. Jordan*, 415 U.S. 651, 671, 94 S. Ct. 1347, 1360 (1974)). The right of custodial parents to interstate travel necessarily includes the similarly fundamental right to *intrastate* travel within Montana. *In re Marriage of Guffin* (*Guffin I*), 2009 MT 169, ¶¶ 10-12, 350 Mont.

489, 209 P.3d 225.[3]    Consequently, a state law parenting plan provision may not substantially interfere with a parent's fundamental right to travel except as narrowly tailored to further a compelling state interest in balance with the competing constitutional rights of both parents.  *See In re M.C.*, ¶¶ 12-13; *In re Adoption of A.W.S. & K.R.S.*, 2014 MT 322, ¶¶ 16-18, 377 Mont. 234, 339 P.3d 414.[4]

¶9      Section 40-4-212, MCA, embodies Montana's compelling interest in striking a reasonable balance between providing for and "protecting the best interests of the child," regarding the child's personal safety, welfare, and "maximum opportunit[y] for the love, guidance[,] and support of both" parents, and the "competing interests" of each parent in having, "to the greatest possible extent" reasonable under the circumstances, "the same freedom to seek a better life" for that parent and the child as the other parent and the child. *See In re M.C.*, ¶ 13 (internal punctuation omitted—quoting *In re Marriage of Cole*, 224 Mont. 207, 213, 729 P.2d 1276, 1280-81 (1986)).  *See also Sable Commc'ns of Cal., Inc. v. F.C.C.*, 492 U.S. 115, 126, 109 S. Ct. 2829, 2836 (1989); *New York v. Ferber*, 458 U.S. 747, 756-57, 102 S. Ct. 3348, 3354 (1982).  However, in contrast to general reference to

---

[3] *Accord Guffin v. Plaisted-Harman* (*Guffin II*), 2010 MT 100, ¶ 6, 356 Mont. 218, 232 P.3d 888 (citing *Guffin I*, ¶ 12).

[4] Counterbalancing a parent's constitutional right to travel, both parents generally have co-equal fundamental constitutional rights to co-parent their children to the extent reasonably possible under the circumstances. *Troxel v. Granville*, 530 U.S. 57, 65-67, 120 S. Ct. 2054, 2059-61 (2000); *Stanley v. Illinois*, 405 U.S. 645, 651-52, 92 S. Ct. 1208, 1212-13 (1972); *In re A.R.A.*, 277 Mont. 66, 70-71, 919 P.2d 388, 391 (1996), *superseded in part by statute as stated in Kulstad v. Maniaci*, 2009 MT 326, ¶ 56, 352 Mont. 513, 220 P.3d 595; *In re Guardianship of Doney*, 174 Mont. 282, 286, 570 P.2d 575, 577 (1977), *superseded in part by statute as stated in Kulstad*, ¶ 56.

the adverse "effects of relocation on children of separat[ed] or divorce[d]" parents, only "legitimate, case-specific" application of pertinent criteria under § 40-4-212, MCA, are a sufficiently narrowly tailored basis upon which to substantially interfere with a parent's right to travel. *See In re M.C.*, ¶ 14 (internal punctuation and citation omitted).

¶10     Here, the District Court manifestly intended the unsafe travel restriction as a narrow, case-related means to protect the child from the unnecessary risk of harm posed by frequent four-hour treks back and forth across the state under Montana's often treacherous winter driving conditions. The disputed provision does not deprive Father of otherwise allotted parenting time but, rather, merely temporarily postpones it depending on adverse weather and related risky driving conditions beyond the control of either parent. While many Montanans are accustomed to such conditions as an acceptable risk of traversing the state for important work, family, and recreational purposes, the District Court's rationale was not arbitrary or otherwise lacking in conscientious judgment. Under these circumstances, the unsafe travel provision does not substantially interfere with Father's constitutional right to travel with M.M.G. during his allotted parenting time, and is in any event narrowly tailored to the case-specific circumstances of this case. We hold that the District Court did not erroneously impose the disputed travel restriction provision in violation of Father's right to travel.

¶11     Father next asserts that the District Court erroneously imposed a parenting plan provision requiring each parent to purchase and maintain a $100,000 life insurance policy to ensure financial support "for the child's upbringing" in the event of an untimely parental

death.  Section 40-4-234(2), MCA, lists permissible parenting plan provisions including, as pertinent here, those addressing "finances to provide for the child's needs."  Section 40-4-234(2)(d), MCA.  Montana law currently provides two legal avenues for imposition of child support obligations: (1) district court child support determinations pursuant to § 40-4-204, MCA, or (2) administrative CSSD child support determinations pursuant to §§ 40-5-203(1), -208(1), -225(1), and/or -272(1), MCA, as applicable.  Here, the disputed life insurance provision is neither based on, nor corresponds or relates to, a case-specific judicial or administrative child support determination under § 40-4-204, MCA, or §§ 40-5-203(1), -208(1), -225(1), and/or -272(1), MCA.  The court did not make a child support determination under § 40-4-204, MCA, and merely referred the parties to CSSD for a subsequent administrative child support determination.  The *sua sponte* $100,000 life insurance proceeds amount was thus not only unauthorized by statute, but also an arbitrary child support provision not based on a judicial or administrative child support determination, or any particularized case-specific evidentiary basis and supporting rationale.  District courts generally "may not grant relief not requested" by a party "when the facts and issues necessary to support such relief have not been tried and proven at trial." *In re Marriage of Toavs*, 2002 MT 230, ¶ 26, 311 Mont. 455, 56 P.3d 356 (internal punctuation and citation omitted—citing *In re George Trust*, 253 Mont. 341, 345, 834 P.2d 1378, 1381 (1992)).  We hold the District Court abused its discretion in imposing the disputed life insurance provision without legal authorization and particularized findings of fact specific to this case.

9

¶12 Father finally asserts the District Court erroneously imposed the parenting plan "counseling" provision to resolve parenting plan disputes on the asserted ground that a party cannot be "[f]orc[ed] . . . to participate in joint mental health care as a prerequisite" to seeking judicial enforcement or amendment of a parenting plan provision, and because "the issue of future co-counseling" was not raised at trial other than in Mother's proposed findings of fact, conclusions of law, and judgment. However, "[i]n every . . . parenting plan proceeding," district courts must incorporate a final parenting plan "into any final decree or amended decree." Section 40-4-234(1), MCA. "[W]hen appropriate under" § 40-4-234, MCA, one of the statutorily authorized "objectives of a final parenting plan" is to "encourage the parents . . . to meet their responsibilities to their minor children through agreements in the parenting plan rather than through judicial intervention." Section 40-4-233(6), MCA. Accordingly, "[b]ased on the best interest of the child," a final parenting plan may provide for "the *method by which future disputes concerning the child will be resolved* between the parents, *other than court action*." Section 40-4-234(2)(i), MCA (emphasis added). Here, despite the District Court's apparent conflation of § 40-4-234(2)(i), MCA (authorizing court-ordered alternative parenting plan dispute resolution), with § 40-4-234(4), MCA (separately authorizing court-ordered "participat[ion] in a dispute resolution process," which "may include [third-party] counseling or mediation" "to assist in resolving [party] conflicts . . . regarding *adoption of the parenting plan*"—emphasis added), we construe the disputed "counseling" provision, not as a requirement for court-ordered mental health or co-parenting skills counseling, but

10

merely as a requirement for the parties to first attempt, before resorting to judicial resolution, to resolve any dispute regarding the meaning, effect, or administration of the final parenting plan through a qualified third-party legal counselor or mediator. We thus hold that, as clarified here, the disputed parenting plan alternative dispute resolution provision was authorized by § 40-4-234(2)(i), MCA, and not an abuse of discretion under the circumstances of this case.

¶13 We decide this case by memorandum opinion pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules. Affirmed in part, and reversed in part, with remand to the District Court for entry of a revised final parenting plan omitting the disputed child support life insurance policy requirement, but including a revised parenting plan alternative dispute resolution provision as construed and clarified in this Opinion.

/S/ DIRK M. SANDEFUR

We concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ JIM RICE