Justice Ingrid Gustafson delivered the Opinion of the Court.
***484 ¶ 1 Lindsay Williams (Lindsay) appeals from the Twenty Second Judicial District Court's Findings of Fact and Conclusions of Law dated October 11, 2017 setting forth the court's ordered parenting plan which provides for the parties' children to reside on a primary basis in ***485 Columbus, Montana. We affirm.
¶ 2 We restate the issue on appeal as follows:
Did the District Court abuse its discretion in ordering the parenting plan which provides for the children to reside on a primary basis in Columbus?
FACTUAL AND PROCEDURAL BACKGROUND
¶ 3 Lindsay and Stevan Williams (Stevan) met in college when a professor requested she take notes for him as he is deaf. They married in July 1999. Prior to having children, the parties moved to Columbus where Stevan began working in his family's business. The parties have three children: G.M.W., born in 2003, G.L.W., born in 2007, and T.R.W., born in 2008. G.M.W and T.R.W.
*1279 were born deaf and have cochlear implants. The parties separated near the end of the school year in 2015. Prior to the parties' separation they resided as a family in Columbus. Post-separation, Stevan remained in Columbus and Lindsay relocated from Columbus to Lovell, Wyoming, then to Bearcreek, Montana, and then later to Lewistown, Montana. The parties alternated parenting of their children on a weekly basis during the summer of 2015, then agreed to continue this 50/50 schedule for the 2015-2016 school year with the children attending school in Columbus. The parties entered into a written Stipulated Marital and Property Settlement Agreement filed November 17, 2016 resolving all non-parenting issues associated with their dissolution. The District Court adopted the parties' Agreement and signed a Decree of Dissolution of Marriage on November 18, 2016. As part of the dissolution, the parties entered into a Stipulated Interim Residential Schedule filed November 7, 2016, which was approved and adopted by the court. This interim plan provided for the children to reside on a primary basis with Stevan and for Lindsay to parent the children on weekends (designated by her but assuring Stevan would parent at least two weekends of each month), alternating major holidays, and time in the summer.
¶ 4 On July 17, 2017, the parties appeared with their respective counsel for trial. At the outset of the hearing, the parties confirmed resolution of all non-parenting issues in their dissolution and proceeded to trial on the remaining parenting issues. The following week, both parties filed post-trial findings. The District Court issued an Order Re: Interim Parenting Plan and Parenting Schedule on August 8, 2017, to remain in effect until the court issued a final parenting order. This interim plan provided for the children to continue to attend school and reside in Columbus. It also provided that ***486 in the event Lindsay relocated back to Columbus, the children would reside with her on a primary basis in Columbus. Subsequently, the District Court issued its Findings of Fact and Conclusions of Law setting forth the District Court's parenting plan on October 12, 2017 from which Lindsay now appeals. Additional facts will be referenced in the discussion below.
STANDARD OF REVIEW
¶ 5 We review the underlying findings in support of a districts court's decision regarding a parenting plan under the clearly erroneous standard. Guffin v. Plaisted-Harman , 2010 MT 100, ¶ 20, 356 Mont. 218, 232 P.3d 888. We review a district court's conclusions of law to determine if they are correct. In re Parenting of C.J ., 2016 MT 93, ¶ 12, 383 Mont. 197, 369 P.3d 1028. A district court has broad discretion when considering the parenting of a child, and we must presume the court carefully considered the evidence and made the correct decision. In re Parenting of C.J. , ¶ 13 (citation omitted). It is not this Court's function to reweigh conflicting evidence or substitute its judgment regarding the strength of the evidence for that of the district court. In re A.F. , 2003 MT 254, ¶ 24, 317 Mont. 367, 77 P.3d 266. Rather, the ultimate test for adequacy of findings of fact is whether they are sufficiently comprehensive and pertinent to the issues to provide a basis for decision, and whether they are supported by the evidence presented. In re Marriage of Wolfe , 202 Mont. 454, 458, 659 P.2d 259, 261 (1983). Accordingly, absent clearly erroneous findings, we will not disturb a district court's decision regarding parenting plans unless there is a clear abuse of discretion. In re Parenting of C.J. , ¶ 13.
DISCUSSION
¶ 6 Did the District Court abuse its discretion in ordering the parenting plan which provides for the children to reside on a primary basis in Columbus?
¶ 7 Lindsay asserts the District Court misapprehended the evidence and abused its discretion in not interviewing the parties' children and in adopting Findings of Fact and Conclusions of Law restating those proposed by Stevan. From review of the record, we do not find these assertions persuasive.
¶ 8 In pertinent part, § 40-4-212, MCA, provides:
(1) The court shall determine the parenting plan in accordance with the best interest *1280 of the child. The court shall consider all relevant parenting factors, which may include but are not limited ***487 to:
(a) the wishes of the child's parent or parents;
(b) the wishes of the child;
(c) the interaction and interrelationship of the child with the child's parent or parents and siblings and with any other person who significantly affects the child's best interest;
(d) the child's adjustment to home, school, and community;
(e) the mental and physical health of all individuals involved;
...
(h) continuity and stability of care;
(i) developmental needs of the child;
...
(k) whether a parent has knowingly failed to financially support a child that the parent is able to support, which is considered to be not in the child's best interests;
(l) whether the child has frequent and continuing contact with both parents, which is considered to be in the child's best interests unless the court determines, after a hearing, that contact with a parent would be detrimental to the child's best interests. In making that determination, the court shall consider evidence of physical abuse or threat of physical abuse by one parent against the other parent or the child, including but not limited to whether a parent or other person residing in that parent's household has been convicted of any of the crimes enumerated in 40-4-219(8)(b).
¶ 9 In its Findings of Fact and Conclusions of Law the District Court detailed its consideration of each of the factors referenced in § 40-4-212, MCA. The Court specifically found both parents desired the children to reside with them on a primary basis and, although the children loved both of their parents, the court concluded the "children have a strong emotional bond to Lindsay and do wish to reside with her." The court noted, however, the children should not be put in a position to choose a parent and the children's "wishes are not always determinative of their best interests." The District Court found the children to have positive relationships with each other and each parent.
¶ 10 Then the court considered the children's adjustment to home, school and community. Stevan continues to reside in the family home in Columbus. Lindsay has moved over two hours away to Lewistown. She testified she did not look for work in Columbus, Park City, Laurel or Billings although she assumed there were jobs available in these closer locations. The court compared the children's well-established support system in the Columbus community with stable extended ***488 family in the area; positive relationships with teachers, aides and classmates; and participation in activities such as sports, 4-H, and rodeo, with the lack of relative/family support, the lack of longstanding friends, and the unknowns of attending school in Lewistown. The court noted the children were well integrated into their home, school, and Columbus community, that they had never lived in Lewistown, and although Lindsay anticipated the children's school performance to be as good or better in Lewistown, this anticipation was at best speculative.
¶ 11 The District Court thoroughly considered the mental and physical health of the children. The court noted G.M.W. and T.R.W to be deaf and rely on cochlear implants. Their friends, classmates, and teachers are familiar with their hearing issues and the Columbus school was already successfully providing the necessary wireless assistive hearing devices for the children's cochlear implants. The court noted T.R.W.'s special needs at school were being met through an IEP/504 plan through the school with the supervising team paying close attention to her hearing and speech needs. The children's report cards indicate they are good students. While the court expected the Lewistown school to make every effort to meet the children's needs, the District Court was provided no specific information as to the resources available to the Lewistown school to assist deaf children with cochlear implants.
¶ 12 In considering the continuity and stability of care, the court found both parents have good relationships with the children and that both are fit and proper to parent the children. The children have resided in and *1281 attended school in Columbus their entire lives. They live next door to their paternal grandparents and have aunts, uncles, and cousins who live nearby. Lindsay moved away from the Columbus area first to Lovell, then to Bearcreek, and then to Lewistown over two hours away. After Lindsay moved to Lewistown, the children lived with Stevan on a primary basis throughout the 2016-2017 school year and the children thrived during this time.
¶ 13 The court then considered the developmental needs of the children concluding the children's needs were being met by both parents along with the Columbus school system (addressing their special audio needs). Again, the court noted that while it could speculate that the Lewistown school system may be able to meet those needs, they are already being met in their home community of Columbus.
¶ 14 The court briefly addressed whether a parent has knowingly failed to financially support the children, stating Stevan's employment adequately supports the children and while Lindsay did obtain a full-time job almost a year before the court's order, she had not paid child ***489 support for the children (because the parties had agreed not to ask for child support) and paid a minimal amount for the children's sports.
¶ 15 The court next considered how each parent would promote the children having frequent and continuing contact with both parents. Lindsay moved away from the children's home community of Columbus and intentionally did not seek employment in communities closer to the Columbus area. Lindsay failed to communicate with Stevan through the Our Family Wizard program throughout the pendency of this cause. Lindsay failed to address communication barriers between the children and Stevan when the children were with her in Lewistown by failing to obtain FaceTime service in Lewistown for nearly a year until shortly before trial (the District Court noted that to communicate over the phone Stevan and the children require either some sort of video conferencing or must resort to texting). Based on these facts, the court concluded Lindsay was less likely than Stevan to promote frequent and continuing contact with the other parent.
¶ 16 In July 2016, the court ordered a parenting evaluation by Sherri Kenck. Ms. Kenck completed her evaluation in April 2017. Ms. Kenck's evaluation was received as evidence and she likewise testified at trial. Ms. Kenck found both parents were good and fit parents, opining them to have equal parenting abilities and to be "two of the best parents that I have ever met." She testified the children exceled in the Columbus schools academically, behaviorally, and socially, and they were thriving in Columbus. In deference to the children's wishes, Ms. Kenck recommended a parenting arrangement whereby the children would reside with Lindsay on a primary basis. The District Court thoroughly considered Ms. Kenck's recommendations but tempered its adoption of those recommendations based on several concerns. The court noted Ms. Kenck only once used an interpreter when she met with Stevan and, given his hearing impairment and his need of interpreting services, this likely resulted in less than optimal communication with Stevan. Ms. Kenck was not aware of Lindsay's intentions regarding school and work. She believed Lindsay intended to work and pursue an online Master's program. She testified, however, she did not know that Lindsay had yet to decide whether she would work full-time and take night classes or work part-time or quit her job. She also did not know Lindsay was required to be in Missoula for five weeks every summer for her Master's program and she did not know that if the children lived with Lindsay and she elected to work full-time and take night classes, she would have less time to spend with the children. The District Court was concerned that Ms. Kenck did not have any information on available resources for deaf children in Lewistown. Ms. ***490 Kenck testified she did not compare the Columbus schools to the Lewistown schools. The District Court was also concerned Ms. Kenck's proposed parenting arrangement was a significant change from the schedule the parties had been following whereby the children resided in Columbus on a primary basis. Ms. Kenck also testified her recommendations as to Stevan's parenting on individual PIR days was not practical. Further, *1282 the summer schedule recommended by Ms. Kenck did not accomplish her stated intention of providing Stevan the majority of the summer. Finally, the court expressed concern that the children would require daycare or after school care in Lewistown, especially since neither would be necessary were they to continue to reside on a primary basis in Columbus. While Ms. Kenck gave primary weight to the wishes of the children, the court is not required to defer to the recommendations of a parenting evaluation. Rather, the court is required to thoroughly consider the best interest factors of § 40-4-212, MCA, to determine the best interest of the children.
¶ 17 Lindsay misconstrues the findings and conclusions of the District Court in her conclusion that the parenting plan "simply penalized Lindsay for living in Lewistown." Lindsay asserts this is contrary to our holding in Guffin v. Plaisted-Harman , 2009 MT 169, 350 Mont. 489, 209 P.3d 225 ( Guffin I ), and Guffin v. Plaisted-Harman , 2010 MT 100, 356 Mont. 218, 232 P.3d 888, ( Guffin II ) (collectively, Guffin ). Contrary to Lindsay's assertion, the District Court did not conclude it was in the best interest of the children for Lindsay to be their day-to-day parent. Upon thorough consideration of the § 40-4-212, MCA, factors, the District Court determined it was in the children's best interests to continue to reside on a primary basis in their home community of Columbus where they have each lived their whole lives. The situation here is far different than that of Guffin .
¶ 18 In Guffin, prior to their marriage the parties lived in Kalispell, Montana, they got married in Kalispell in 2001, and then had two children in Kalispell. In February 2006, the parties moved to Terry, Montana for father to pursue different work. Guffin I , ¶ 3. The parties separated in September 2007 and in November 2007 father quit his job and moved two hours away from mother and the children to Ekalaka, Montana. Guffin II , ¶ 2. In February 2008, the parties filed a joint parenting plan which the court adopted whereby the children resided with mother on a primary basis. Guffin II , ¶ 3. In March 2008, mother told father she intended to move back to Kalispell but did not provide written notice of this intention. Guffin II , ¶ 4. In June 2008, mother moved back to Kalispell. At the end of father's summer parenting time, he moved to amend the parenting plan faulting mother for providing ***491 him only oral, not written, notice of her intention to move. In granting father's request to amend the parenting plan, the district court explicitly stated mother should have to "pay the price" of reduced parental contact since she was the one who decided to move to Kalispell. Guffin II , ¶ 5. Upon appeal, this court reversed, holding mother had a constitutional right to travel and could not be penalized for exercising this right and confirming "[a]ny decision as to custody of the children must be based upon a careful examination of what is in their best interests." Guffin I , ¶¶ 11-12. Upon remand, the district court found mother to be a fit parent, had supportive family in Kalispell, and the children had a positive relationship with mother's boyfriend. Guffin II , ¶ 25. The district court did not conclude either parent's location would have any significant advantages or disadvantages for the children. Guffin II , ¶ 10. Instead, the district court again concentrated on mother's "unilateral" decision to move, the timing of her decision to move, and her failure to follow the written notice requirement of § 40-4-217, MCA, rather than the best interests of the children. Guffin II , ¶ 29. The district court again amended the parenting plan to designate father as the primary custodial parent. Guffin II , ¶ 7. Upon appeal, this Court again reversed, holding the determination of a parenting plan should focus solely on the best interests of the children and consideration of a parent's decision to relocate may not be held against the parent unless it exemplifies a willful and consistent attempt to frustrate or deny the other parents contact with the children. Guffin II , ¶ 33.
¶ 19 Unlike Guffin , this case involves an initial parenting plan determination and does not involve a situation where the moving parent had, prior to separation, been the primary parent and, after separation, by agreement had already been parenting the children on a primary basis. Prior to separation, the parties here were residing together co-parenting their children. While after separation *1283 the parties initially shared the children on a 50/50 basis for a short time, the parties agreed to an interim parenting plan providing for the children to live on a primary basis in Columbus with Stevan. This parenting arrangement continued over the 2016-2017 school year. During this interim period Lindsay engaged in conduct that interfered with Stevan's interaction with their children when the children were in her care. Here, the District Court did not determine Lindsay to be the day-to-day parent of the children. The District Court determined both parties to be good parents fully capable of meeting the daily demands of parenting. More importantly, in considering the best interest factors under § 40-4-212, MCA, the District Court's findings and conclusions ***492 indicate an over-arching conclusion that it is in the children's best interest to continue to reside on a primary basis in their home community of Columbus. While a parent cannot be penalized for moving, this does not preclude a court from considering the impact the move has on the best interests of the children regarding the factors in § 40-4-212, MCA. The District Court did not punish Lindsay for moving, but rather appropriately considered Lindsay's decision to move, her various moves and motivation therefor, and her failures to address communication barriers caused by her moves in considering the children's best interests under the § 40-4-212, MCA, best interest factors. Although the court considered the children's wishes and recognized the children had a somewhat stronger bond with Lindsay than with Stevan, the court found these factors did not override or outweigh the considerable benefits to the children of remaining on a primary basis in the Columbus area, especially in light of their very positive relationship with Stevan. In providing for the children to be able to reside with Lindsay were she to choose to live in the Columbus area, the court determined under that circumstance the children would not only be able to reap the benefits of living in the Columbus area but their wishes could also be accommodated. This is consistent with the required considerations under § 40-4-212, MCA.
¶ 20 Lindsay asserts the District Court erred in not interviewing the children. Prior to trial, Lindsay made two motions for the court to interview the children. The District Court did not make a specific ruling on the motions, but it did not interview the children. "The court may interview the child in chambers to ascertain the child's wishes as to residence and parental contact." Section 40-4-214(1), MCA (emphasis added). While consideration of children's wishes is a factor the court must consider pursuant to § 40-4-212(b), MCA, the court is not required to interview the children nor is it required to follow their wishes. At trial, parenting evaluator Sherri Kenck testified the children were more connected to Lindsay and desired to live with her. The District Court specifically considered the children's wishes to reside with Lindsay in considering their best interests. It was within the District Court's discretion whether to interview the children. We do not find any abuse of discretion by the District Court in not interviewing the children.
¶ 21 Lindsay asserts the District Court abused its discretion when it restated Stevan's proposed findings of fact and conclusions of law as its own. We have cautioned against wholesale adoption of a party's findings and conclusions. Nevertheless, we have repeatedly held the ultimate test for adequacy of findings of fact is whether they are ***493 sufficiently comprehensive and pertinent to the issues to provide a basis for decision, and whether they are supported by the evidence presented. In re Marriage of Wolfe, 202 Mont. at 458, 659 P.2d at 261. As noted by Stevan, careful review of the District Court's findings and conclusions shows that although the court used much of Stevan's language, it added or omitted language in nearly every paragraph. The District Court's findings and conclusions are detailed, comprehensive, pertinent to the parenting issues between the parties and, most importantly, supported by the evidence presented at trial.
¶ 22 Lindsay suggests the court inappropriately limited witnesses.[1] Lindsay *1284 did not object at trial to the time allotted or any perceived witness limitations. Upon both parties resting their cases, Lindsay's counsel indicated he did not desire to place anything else on the record. A trial court has broad discretion to oversee trial administration and is in the best position to consider the most fair and efficient procedure to conduct the litigation. Jacobsen v. Allstate Ins. Co. , 2013 MT 244, ¶ 25, 371 Mont. 393, 310 P.3d 452. Failure to make contemporaneous objection deprives the court from opportunity to correct the error, if any, and waives the matter for later appellate review. State v. Olsen , 2004 MT 158, ¶ 10, 322 Mont. 1, 92 P.3d 1204. To the extent Lindsay asserts the court inappropriately limited witnesses, we do not agree. The court fairly divided the time between the parties. The court properly administered the trial and, by her failure to object, Lindsay has waived this issue for review.
¶ 23 In sum, Lindsay does not really disagree with the facts found by the District Court, but rather disagrees with the court's interpretation of those facts. Lindsay urges us to substitute her interpretation of the facts to find the District Court abused its discretion. We decline to do so. A district court has broad discretion when considering the parenting of a child, and we must presume the court carefully considered the evidence and made the correct decision. In re Parenting of C.J. , ¶ 13. The District Court appropriately considered and weighed the evidence presented and the conflicting perceptions of the parties, and made findings of fact supported by the evidence and its conclusions of law. It is not this Court's function to reweigh conflicting evidence or substitute its judgment regarding the strength of the evidence for that of the district court.
***494 In re A.F. , 2003 MT 254, ¶ 24, 317 Mont. 367, 77 P.3d 266. Accordingly, we find the District Court did not err in issuing this parenting plan.
¶ 24 Finally, Stevan requested we impose attorney fees. Rule 19(5), M. R. App. P., allows this Court to award attorney fees to the prevailing party as part of a sanctions scheme if filings are found to be "frivolous, vexatious, filed for purposes of harassment or delay, or taken without substantial or reasonable grounds." We do not find any of these standards met in the appeal record and decline to award fees.
CONCLUSION
¶ 25 We conclude the District Court's findings are sufficiently pertinent to the issues, comprehensively set forth the basis for the court's decision, are supported by the evidence presented, and are not clearly erroneous. The District Court's conclusions of law were correct. The District Court employed conscientious judgment in reaching its decision. We affirm and decline to award attorney fees.
We concur:
JAMES JEREMIAH SHEA, J.
LAURIE McKINNON, J.
DIRK M. SANDEFUR, J.
JIM RICE, J.

Although Lindsay mentions the court limited witnesses to Ms. Kenck and two witnesses for each party in her Statement of the Case, she does not further develop this argument, although Stevan has responded to it.