FILED

02/25/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0436

DA 24-0436

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 40N

IN RE THE PARENTING OF E.O.:

SIVANA F. CORPRON,

      Petitioner and Appellee,

  v.

DANIEL T. O'GORMAN,

      Respondent and Appellant.

APPEAL FROM:   District Court of the Fifth Judicial District,
                In and For the County of Jefferson, Cause No. DR-23-45
                Honorable Luke Berger, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Michelle H. Vanisko, Vanisko Law, PLLC, Helena, Montana

      For Appellee:

          Sivana F. Corpron, Self-Represented, Boulder, Montana

Submitted on Briefs:  February 5, 2025

Decided:   February 25, 2025

Filed:

_____
                Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Appellant, Daniel T. O'Gorman (Daniel), appeals from the May 29, 2024 Order issued by the Fifth Judicial District Court, Jefferson County, in which the court ordered a parenting plan which maintained the 50/50, week-on/week-off schedule of the interim parenting plan until the 2024 school year, and upon such provided for the parties' child, E.O., to reside on a primary basis with Appellee, Sivana F. Corpron (Sivana), during the school year and on a 50/50, week-on/week-off basis with each parent during the summer months. We affirm.

¶3 The parties were never married but have a child together, E.O., born in 2019. In 2020, the Department of Public Health and Human Services, Child and Family Services Division (the Department) became involved with the family. Sivana successfully resolved her parenting issues, Daniel disappeared, and the Department closed its case in January 2021, placing E.O. with Sivana. Daniel asserts he was then absent from E.O.'s life for the next two and a half to three years as he needed time to get sober. During his parenting time in September 2023, he asserts E.O. reported that during Sivana's parenting time, E.O.'s

developmentally disabled cousin initiated inappropriate sexual touching. Daniel reported such to the Department which began an investigation.

¶4 On October 10, 2023, Sivana filed a Petition for Parenting Plan and later that day, Daniel filed an *Ex Parte* Motion for Interim Parenting Plan based on the Department's involvement and investigation. The District Court granted Daniel's Interim Parenting Plan, which gave Daniel primary custody while the Department conducted its investigation.

¶5 On November 27, 2023, the Department closed the report as founded but ceased its involvement with the family due to the parties' active involvement with the District Court to establish a parenting plan. The District Court thereafter modified the Interim Parenting Plan and moved to a 50/50, week-on/week-off parenting schedule on December 15, 2023. Thereafter, the District Court held a contested parenting plan hearing where both parties testified and presented considerable evidence regarding E.O.'s allegations of sexual touching, the Department's investigation, and their perceptions as to the parenting arrangement they each believed met E.O.'s best interests. At hearing, Sivana advocated E.O. should live on a full-time basis with her and have contact with Daniel as she determined appropriate. Daniel advocated to maintain the 50/50, week-on/week-off co-parenting schedule they had been following on an interim basis. On May 29, 2024, the District Court issued its written Order in which it did not give either parent the parenting time or control they sought. The District Court maintained the 50/50, week-on/week-off parenting schedule through to the commencement of the 2024 school year. Upon commencement of the 2024 school year, the court provided E.O. would reside on a primary

basis with Sivana during school years and revert to the 50/50, week-on/week-off parenting schedule during summer breaks from school. The parenting plan also provided for specific holiday time for each parent, phone/video contact, weekend parenting time for Daniel during the school year, etc. Daniel now appeals the court's designation of Sivana as the primary custodial parent during the school year.

¶6 We review a district court's findings establishing a parenting plan under the clearly erroneous standard. *In re Marriage of Williams*, 2018 MT 221, ¶ 5, 392 Mont. 484, 425 P.3d 1277. We review a district court's conclusions of law to determine if they are correct. *In re the Parenting of C.J.*, 2016 MT 93, ¶ 12, 383 Mont. 197, 369 P.3d 1028. "A district court has broad discretion when considering the parenting of a child, and we must presume that the court carefully considered the evidence and made the correct decision." *C.J.*, ¶ 13 (citation and internal quotations omitted). Accordingly, absent clearly erroneous findings, we will not disturb a district court's decision regarding parenting plans unless there is a clear abuse of discretion. *C.J.*, ¶ 13.

¶7 Daniel asserts the District Court erred in giving Sivana primary custody given her failure to protect E.O. from abuse and failed to properly apply the best interest factors set forth in § 40-4-212, MCA. Daniel does not specifically dispute any of the District Court's findings of fact but rather disputes the court's ultimate parenting schedule which provides for E.O. to live on a primary basis with Sivana during the school year. He asserts Sivana's failure to believe E.O. and her non-cooperation with the Department demonstrate her lack

4

of commitment to E.O.'s wellbeing.  Under our standards of review and from our review of the record, we are not persuaded by Daniel's assessment.

¶8      Section 40-4-212, MCA, requires a district court to determine the parenting plan in accordance with the best interests of the child by considering all relevant factors which "may include but are not limited to" the factors listed in the statute.  The District Court diligently considered the evidence presented with regard to the parties' histories, E.O's concerning and founded allegations, the Department's involvement and investigation, the success of the 50/50 interim schedule despite each parent acting selfishly and childishly during the interim period, E.O.'s undisputed adjustment difficulties in transitioning between parents, and the conflict between E.O. attending school with her siblings in Boulder, Montana where Sivana resides or attending school in Helena, Montana where Daniel resides.  Contrary to Daniel's assertion that the court never addressed any of the Department's concerns, the District Court considered extensive testimony from the Department and Sivana's concerning response to E.O.'s allegations, weighing such against other positive parenting behaviors, E.O.'s positive relationship with siblings in Sivana's home, her adjustment to the Boulder, Montana community, and Daniel's unstable living situation.

¶9      It is the District Court's role to untangle the conflicting evidence. *In re Matter of A.F.*, 2003 MT 254, ¶ 24, 317 Mont. 367, 77 P.3d 266.  The court appropriately heard and marshalled the evidence, weighed its credibility, thoroughly and conscientiously considered the best interest factors set forth in § 40-4-212, MCA, and set forth specific

findings related to each factor. Further, the District Court found concerns with regard to each parent noting Sivana's failure to appreciate the reasons for the most recent Department involvement and her resistance to co-parenting with Daniel as well as Daniel's history of not being in E.O's life for an extended period of time and the instability of his living situation. Given the instability of his living situation, it was appropriate for the court to provide for E.O. to reside on a primary basis with Sivana to attend school with her siblings during the school year in Boulder, Montana. Although Daniel asserted Sivana's suspiciousness of E.O.'s allegations of abuse and her lack of cooperation with the Department evidenced she could not keep E.O. safe, at hearing he did not advocate for supervision of her parenting time and instead asserted that she should co-parent on a 50/50 basis—tacitly acknowledging Sivana has protective parenting capacities.

¶10 In the light most favorable to Sivana, the evidence of record supports the District Court's findings and conclusions. From our review of the record, the District Court properly applied the § 40-4-212, MCA, best interest factors to the evidence presented and we cannot conclude the District Court incorrectly followed Montana statutes and well-settled precedent in ordering the parenting plan it did.

¶11 Obviously, the allegations advanced by E.O. are concerning and were founded by the Department. In light of this, Sivana should be diligent in not permitting E.O. to be unsupervised in the presence of her cousin—if nothing more than to avoid further Department involvement. Further, like the District Court did, we encourage the parties to

6

put aside their blame of each other and try to work together to co-parent E.O. in a productive and supportive manner.

¶12    We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶13    Affirmed.

/S/ INGRID GUSTAFSON

We Concur:

/S/ CORY J. SWANSON
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ KATHERINE M BIDEGARAY