FILED

03/25/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0382

DA 24-0382

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 57

IN RE MATTER OF THE PARENTING OF:

A.H.S., a minor child;

CHAD SENECHAL,

Petitioner and Appellee,

and

MAIRA HORTA MOSS,

Respondent and Appellant.

APPEAL FROM:   District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. DDR-2022-528
Honorable Christopher D. Abbott, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Maira Horta Moss, Self-Represented, Helena, Montana

For Appellee:

Sara S. Berg, Laird Cowley, PLLC, Helena, Montana

Submitted on Briefs:  February 19, 2025

Decided:  March 25, 2025

Filed:

_____
Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Maira Moss (Mother) appeals from the May 18, 2023 Order of the First Judicial District Court, Lewis and Clark County, determining that it had jurisdiction over the child custody proceeding concerning A.H.S., and from the Final Parenting Plan and the Findings of Fact, Conclusions of Law, and Order Adopting Parenting Plan issued by that court on May 22, 2024. We affirm.

¶2 We restate the issues on appeal as follows:

*Issue 1: Whether the District Court erred in determining that it had initial jurisdiction over the child custody proceeding concerning A.H.S.*

*Issue 2: Whether the District Court abused its discretion in temporarily limiting A.H.S.'s travel outside Montana.*

*Issue 3: Whether the District Court erred by not adequately considering evidence of domestic violence when determining A.H.S.'s best interests pursuant to § 40-4-212, MCA.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 Mother and A.H.S.'s father, Chad Senechal (Father) were never married but have one child together, A.H.S., born in February 2018 in San Diego, California. Mother is from, and has family in, Brazil. Mother and A.H.S. are dual citizens of Brazil and the United States. Mother and Father moved to Montana with A.H.S. in April 2020. Unhappy differences arose between the parties, and Mother secreted A.H.S. to California without prior notice or consent of Father, cutting off contact with Father and refusing to divulge her location. Nearly immediately thereafter, on September 8, 2022, Father filed his Verified Petition for Parenting Plan. On that same date, Father also filed a Motion for Ex Parte Interim Parenting Plan alleging Mother had taken the parties' child out of her home

2

state of Montana, cut off contact with Father, had the means to leave the country, and law enforcement would not intervene as there was no parenting plan in effect. On September 9, 2022, the District Court adopted Father's proposed interim parenting plan as the Interim Parenting Plan. The Interim Parenting Plan required Mother to immediately return A.H.S. to Montana for her to remain in Father's care and to surrender the child's passports to Father. Mother, although aware of the Montana parenting plan action and interim parenting plan, managed to avoid service for several months while Father obtained an order to serve her by publication and sought criminal contempt against her.

¶4      During this time, Mother attempted to get California to exercise jurisdiction by filing for a domestic violence restraining order. Krystal Limon, a licensed California attorney, appeared on Father's behalf at hearing to contest jurisdiction over Father, to advise the California court of the pending Montana parenting action, and to request the court contact the Montana court to conduct a conference required by the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA). A UCCJEA conference of the California court and Montana court was held with the parties present electronically on October 18, 2022. Following which, the California court issued an order denying further evidentiary hearing as there were no material facts in controversy. The court noted that California could exercise personal jurisdiction over Father if he has minimum contacts or if abusive acts occurred in or were directed at California. The California court concluded Father made no general appearance in California other than in opposition to UCCJEA proceedings. The California court also concluded the text message asserted by Mother to be abusive—saying a party who left the state with the child could be subjected to

3

kidnapping charges—was not abuse. The California court declined to exercise jurisdiction, concluding it did not have personal jurisdiction over Father, and his actions were not sufficient to give California jurisdiction as to domestic violence.

¶5 On November 14, 2022, after reading and considering Mother's petition for a writ of mandate and request for stay, the California Court of Appeal, Fourth Appellate District, denied Mother's petition.[1] After Mother's counsel acknowledged service of the parenting plan petition and additional demand was made for her to comply with the interim parenting plan, she refused, forcing Father to obtain a contempt order. Following which, Mother finally returned the parties' child to Montana in June 2023. Thereafter, commencing January 17, 2024, the District Court held a hearing on Mother's motion to amend the interim parenting plan. Following the first day of hearing, the court issued an Order Amending Interim Parenting Plan which amended Mother's parenting time from supervised to unsupervised. After the second day of hearing on February 5, 2024, the court

---

[1] In a May 21, 2024 order, the California Court of Appeal reversed the lower court's ruling and dismissal and remanded the matter back to the lower court to clarify either (1) that it was deciding the question of home state jurisdiction, in which case Mother could then renew her request for an evidentiary hearing or (2) whether the court intended to address whether California is an inconvenient forum and Montana the more convenient forum, in which case the parties must be permitted to present evidence on the statutory factors. In a subsequent order of June 11, 2024, the California Court of Appeal modified its May 21, 2024 order to amend footnote 6 to clarify that although the Court of Appeal declined to make findings regarding Father's assertion that Mother averred Montana to have "exclusive and continuing jurisdiction" in her verified motion to amend the interim parenting plan filed in the Montana cause, Father may ask the lower court upon remand to take judicial notice of her motion. Although proceedings are still pending in California, such do not preclude this Court from determining whether the District Court erred in finding Montana had jurisdiction to enter an initial child custody determination and rejecting Mother's attempts to persuade the court to decline jurisdiction in favor of California.

4

again amended the interim parenting plan, directing the parties to transition parenting time to every other week.

¶6     On April 17 and May 1, 2024, the District Court conducted another two-part hearing for the purpose of establishing a final parenting plan. On May 22, 2024, the District Court issued its Findings of Fact, Conclusions of Law, and Order Adopting Parenting Plan along with its Final Parenting Plan in which it provided for a 50/50 alternating week parenting schedule and provided a limitation of travel precluding either parent from removing A.H.S. from Montana or the United States until the litigation related to the child or jurisdiction over parenting remained pending in California. The court imposed this continuing limitation due to its concern that allowing Mother to travel created some risk that she could further seek relief in California courts while traveling with the child, again severing ties with Father.

¶7     Mother appeals.

**STANDARD OF REVIEW**

¶8     A district court's determination of whether it has subject matter jurisdiction is a conclusion of law reviewed for correctness. *In re Marriage of Sampley*, 2015 MT 121, ¶ 6, 379 Mont. 131, 347 P.3d 1281. We review a district court's findings establishing a parenting plan under the clearly erroneous standard. *In re Marriage of Williams,* 2018 MT 221, ¶ 5, 392 Mont. 484, 425 P.3d 1277. We review a district court's conclusions of law to determine if they are correct. *In re the Parenting of C.J.*, 2016 MT 93, ¶ 12, 383 Mont. 197, 369 P.3d 1028. A district court has broad discretion when considering the parenting of a child, and we must presume the court carefully considered the evidence and made the

5

correct decision. *C.J.*, ¶ 13 (citation omitted). Accordingly, absent clearly erroneous findings, we will not disturb a district court's decision regarding parenting plans unless there is a clear abuse of discretion. *C.J.*, ¶ 13.

**DISCUSSION**

¶9 *Issue 1: Whether the District Court erred in determining that it had initial jurisdiction over the child custody proceeding concerning A.H.S.*

¶10 Mother asserts the District Court erred in exercising jurisdiction over the child custody proceedings as there is an unresolved UCCJEA jurisdictional conflict with California. Mother also asserts the District Court erred in declining to exercise jurisdiction because Montana is an inconvenient forum and California is a superior forum. Contrarily, Father asserts the California Court of Appeal's orders of May 21, 2024 and June 11, 2024 have no bearing on Montana's binding, continuing, and exclusive jurisdiction. Father asserts the orders make no finding that California, rather than Montana, should have UCCJEA jurisdiction. Rather, they remand the matter for further proceedings during which Mother may ask the court to consider UCCJEA jurisdiction, and Father may ask the court to take judicial notice of Mother's verified assertion in her motion to amend the interim parenting plan that Montana has "exclusive and continuing jurisdiction." Father also asserts the District Court's determination of custody jurisdiction is supported by substantial credible evidence and proper application of the UCCJEA and Montana law.

¶11 In 1977, Montana adopted the Uniform Child Custody Jurisdiction Act (UCCJA), which was enacted to promote uniformity and discourage jurisdictional conflict. Prior to all 50 states adopting the UCCJA, the disparate and conflicting exercise of jurisdiction over

6

child custody matters encouraged re-litigation, forum shopping, and self-help never ending disputes. The purpose of the UCCJA was to eliminate these problems by establishing uniform criteria for states to exercise jurisdiction of child custody matters. *See* UCCJA § 1. The UCCJA was revised to help further the Act's goals and address inconsistencies among state interpretation and enforcement of the UCCJA resulting in the UCCJEA, which Montana adopted in 1999.[2] Montana did not repeal the UCCJA but instead amended its language. *Sampley*, ¶ 24 (citing Sec. 4, Ch. 91, L. 1999); s*ee* §§ 40-7-101 to -317, MCA.

¶12     Recognizing the potential for inconsistencies among state interpretation and enforcement, the UCCJEA contains important judicial communication and cooperation provisions to promote uniformity and reduce the potential for courts to issue inconsistent, competing jurisdictional orders in child custody proceedings. Section 40-7-107(1), MCA, precludes a court of this state from exercising jurisdiction "if at the time of commencement of the proceeding a proceeding concerning the custody of the child had been previously commenced in a court of another state having jurisdiction . . . unless the proceeding has been terminated or is stayed by the court of the other state." Further, before hearing a child custody proceeding, the court must determine if a child custody proceeding was previously commenced in a court of another state and, if so, "stay its proceeding and communicate with the court of the other state." Section 40-7-107(2), MCA. Section 40-7-139, MCA, then provides the ability for the court to communicate with a court of another state, to allow the parties to participate in the communication, and for a record of the communications

---

[2] Massachusetts is the only state that has not adopted the UCCJEA.

between the courts to be kept. Section 40-7-140, MCA, provides for a court of this state to request a court of another state to hold an evidentiary hearing; order a person to produce evidence; order a child custody evaluation; forward certified copies of the transcript, evidence presented, and evaluation prepared to a court of another state; and order a party to appear in the proceeding. Section 40-7-140, MCA, provides these same abilities to a court of another state. Communication between courts with participation of the parties is designed to reduce the potential for courts to issue competing, inconsistent orders regarding jurisdiction.

¶13 The UCCJEA governs when there is a dispute as to which state should have jurisdiction over a parenting action. Under the UCCJEA, general principles of determining jurisdiction, including a party's domicile, are inapplicable. *See* § 40-7-201(3), MCA. Instead, the UCCJEA prioritizes home-state jurisdiction for child custody proceedings, under which a state has jurisdiction if it is the child's "home state." Section 40-7-201(1)(a), MCA.

¶14 Under the UCCJEA:

a court of this state has jurisdiction to make an initial child custody determination only if:
(a) this state is the home state of the child on the date of the commencement of the proceeding or was the home state of the child within 6 months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;
(b) a court of another state does not have jurisdiction under subsection (1)(a), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under 40-7-108 or 40-7-109, and:

8

(i) the child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and

(ii) substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships;

(c) all courts having jurisdiction under subsection (1)(a) or (1)(b) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under 40-7-108 or 40-7-109; or

(d) no state would have jurisdiction under subsection (1)(a), (1)(b), or (1)(c).

Section 40-7-201, MCA. Here, as required by the UCCJEA, the District Court appropriately conferenced with the California court on October 18, 2022, which was attended by both parties and their counsel, afforded the parties opportunity to be heard, and consulted Mother's affidavit in assessing whether it could exercise jurisdiction as the child's home state or otherwise under § 40-7-201(1), MCA.

¶15 According to Mother's affidavit, between the time the parties moved to Montana in April 2020 and the commencement of this action on September 8, 2022, A.H.S. had lived primarily in Montana and Brazil as follows:

| Date Start | Date End | Location | Duration (approx.) |
|---|---|---|---|
| April 2020 | August 2020 | Montana | 4 months |
| September 8, 2020 | February 20, 2021 | Brazil | 5 months |
| February 21, 2021 | November 12, 2021 | Montana | 8 months |
| November 13, 2021 | April 22, 2022 | Brazil | 5 months |
| April 23, 2022 | September 4, 2022 | Montana | 4 months |
| September 4, 2022 | September 8, 2022 | California | 4 days |

9

The District Court noted that a state is the "home state" if it is "the state in which a child lived with a parent or a person acting as a parent for at least 6 consecutive months immediately before the commencement of a child custody proceeding." At the time this proceeding was initiated on September 8, 2022, the court correctly noted A.H.S. had resided in California for only four days, and in the six preceding months she had resided in Montana for at least four months and in a foreign nation, Brazil—which is not a "state" within the meaning of the UCCJEA.[3] It was undisputed A.H.S. had not resided in California for well over two years, and in October 2022, the California Superior Court, San Diego County had made the same determination. Consequently, under § 40-7-201, MCA, because A.H.S. had not resided in California for a six-month consecutive period before commencement of the parenting action, California is not the "home state," and without counting the time in Brazil as a temporary absence, no state would be considered the "home state" within the meaning of the UCCJEA. Montana may exercise jurisdiction to make an initial child custody determination because there is no other state with jurisdiction. Having correctly concluded there is no other state with jurisdiction under the UCCJEA, the District Court determined it had jurisdiction to make a parenting determination pursuant to § 40-4-211(1)(b), MCA. Section 40-4-211(1)(b), MCA, provides:

---

[3] The District Court did not analyze whether, under the totality of the circumstances, A.H.S.'s time in Brazil was a temporary absence from Montana which would be considered part of the six consecutive month period. *See* § 40-7-103(7), MCA; *Sampley*, ¶¶ 22, 26-27. While on the record before us, the five months in Brazil could reasonably be considered to have been a temporary absence from Montana, we do not further consider such as the District Court did not err in its determination that "Montana may exercise jurisdiction to make an initial child custody determination because there is no other state with jurisdiction" under § 40-7-201, MCA.

10

(1) A court of this state competent to decide parenting matters has jurisdiction to make a parenting determination by initial or amended decree if:

    .   .   .

(b) it is in the best interest of the child that a court of this state assume jurisdiction because:
    (i) the child and the parents or the child and at least one contestant have a significant connection with this state; and
    (ii) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships.

Pursuant to the plain language of the statute, the District Court correctly determined it is in the best interests of A.H.S. for the Montana court to assume jurisdiction *because* A.H.S. and Father have a significant connection with Montana and substantial evidence concerning A.H.S.'s present or future is available in Montana.[4] Once the District Court determined it had jurisdiction pursuant to the UCCJEA and § 40-4-211(1)(b), MCA, it then undertook evaluation as to whether to decline to exercise its jurisdiction based on inconvenient forum. Section 40-7-108(1), MCA, provides, "[a] court of this state that has jurisdiction . . . to make a child custody determination may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum."

---

[4] Mother does not seriously contest that A.H.S. and Father have a significant connection with Montana, nor that substantial evidence is available in Montana concerning A.H.S.'s present or future care, protection, training, and personal relationships. Instead, she asserts California jurisdiction better meets A.H.S.'s best interests. Even were we to assume such to be accurate, which we do not, that is not the statutory criteria for exercising child custody jurisdiction under § 40-4-211(1)(b), MCA.

11

Section 40-7-108(2), MCA, sets forth relevant factors a court shall consider in determining whether it is an inconvenient forum:

(a) whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child;
(b) the length of time that the child has resided outside this state;
(c) the distance between the court in this state and the court in the state that would assume jurisdiction;
(d) the relative financial circumstances of the parties;
(e) any agreement of the parties as to which state should assume jurisdiction;
(f) the nature and location of the evidence required to resolve the pending litigation, including testimony of the child;
(g) the ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence; and
(h) the familiarity of the court of each state with the facts and issues in the pending litigation.

Section 40-7-108(2), MCA.

¶16    Here, the District Court considered each factor separately, conscientiously outlining its reasoning in concluding Montana is not an inconvenient forum. The court noted that although distance between the courts weighs both directions, given the length of time A.H.S. has resided in Montana, her strongest and most recent connection is to Montana. Of primary consideration to the District Court in considering the § 40-7-108(2), MCA, factors was not to incentivize continued forum-shopping by Mother.

¶17    Mother and Father each presented their jurisdictional evidence. The Montana Court considered and weighed that evidence and prepared comprehensive findings and conclusions pertinent to the jurisdictional issue supporting the basis of its determination that Montana has jurisdiction under § 40-7-201, MCA, § 40-4-211(1)(b), MCA, § 40-7-108(2), MCA, and § 40-7-202, MCA. From our review of the record, the District Court did not misinterpret the law, did not misapprehend the circumstances, its findings

were not clearly erroneous, and it did not err in exercising jurisdiction. The record contains substantial credible evidence supporting the findings and conclusions of the Montana Court. Once it appropriately exercised jurisdiction, the District Court had "exclusive, continuing jurisdiction" pursuant to § 40-7-202, MCA.

¶18     *Issue 2: Whether the District Court abused its discretion in temporarily limiting A.H.S.'s travel outside Montana.*

¶19     In the interim parenting plan, the District Court temporarily precluded Mother from any out-of-state or international travel with A.H.S. until the litigation pending in California courts was concluded. The Final Parenting Plan stated, "neither parent may take A.H.S. out of the state or the United States without the advance written permission of the other parent." The District Court was concerned that allowing A.H.S. to travel created risk Mother may flee with A.H.S. and seek further relief in California, again severing ties with Father.

¶20     Mother argues the temporary travel ban violates her right to travel. She claims the restriction was overly broad and not narrowly tailored to address the court's concern of her absconding to California, especially considering the court explicitly acknowledged Mother did not present a legitimate risk of absconding at that time. Mother also claims the travel ban negatively impacts A.H.S.'s cultural and familial connections against her best interests, and it disproportionately impacts A.H.S. and Mother more than Father because Father lives in and grew up in Montana.

¶21     Father argues Mother misinterpreted the travel ban to include herself, when it really only applies to A.H.S. Thus, Father asserts the travel ban affects both parents equally as

13

they are both precluded from interstate and international travel with A.H.S. Father asserts the travel ban supports A.H.S.'s needs and best interests by providing stability and continuity in her care. Father argues the travel ban provides time with both parents without disruption of her care or denial of contact with either parent.

¶22 We find the District Court did not abuse its discretion by imposing the temporary travel restriction on A.H.S. The District Court intended the travel restriction to be temporary and to further A.H.S.'s best interests. Under § 40-4-212(1)(h), MCA, a court may consider the continuity and stability of care when determining a child's best interests. The court found A.H.S. was deprived of continuity and stability of care from September 2022 until July 2023 because Mother secretly absconded with A.H.S. to California without telling Father. Thereafter, Mother evaded service of process from Father relating to the Montana proceedings, only accepting service once she faced charges of contempt and potential incarceration. Mother then failed to follow court orders to immediately return A.H.S. to Montana. Although Mother eventually conceded Montana has continuing and exclusive jurisdiction while she was asking the Montana court to expand her parenting time, Mother contrarily pursued appeals in the California courts. The District Court noted, because of Mother's less than good faith efforts and actions, "A.H.S. veered from near-exclusive parenting from one parent to the next and has shuttled between two states." This inconsistency heightened A.H.S.'s need for stability and a predictable, consistent routine for exchanges between parents.

¶23 We find the record evidence supports the District Court's findings and conclusions. Mother's less than good faith efforts and actions gave rise to appropriate concern that she

14

may attempt to secret the child away again and continue to forum shop in California, or elsewhere. A temporary travel restriction—placed on A.H.S., not the parents—was a reasonable use of discretion to protect the stability and continuity of A.H.S.'s care while the pending litigation resolves. The District Court did not abuse its discretion in this regard.

¶24 *Issue 3: Whether the District Court erred by not adequately considering evidence of domestic violence when determining A.H.S.'s best interests pursuant to § 40-4-212, MCA.*

¶25 Mother argues the District Court did not give proper attention to the evidence in the record of domestic violence and the effect it had on A.H.S. According to Mother, the District Court focused only on the absence of physical harm to A.H.S. and disregarded evidence of Father's threats and acts of violence towards Mother and the psychological effects that has on A.H.S. Father argues the District Court properly considered the statutory best interest of the child factors and determined he should not receive less than equal parenting time based on the prior domestic violence allegations.

¶26 Section 40-4-212, MCA, provides that a court must determine the parenting plan in accordance with the child's best interests. When reviewing the child's best interests, the court may consider relevant parenting factors, including but not limited to: the wishes of the child and parents; the child's relationship with the parents; the child's adjustment to home, school, and community; the mental and physical health of all involved; physical abuse by one parent against the other or the child; chemical dependency; continuity of care; the child's development needs; whether a parent knowingly failed to pay birth-related costs or financially support the child; whether the child has contact with both parents; and any adverse effects on the child resulting from continuous parenting plan amendments.

15

Additionally, when analyzing the best interest factors, it is the District Court's role to untangle any conflicting evidence. *In re Matter of A.F.*, 2003 MT 254, ¶ 24, 317 Mont. 367, 77 P.3d 266. Even when there is a conflict in the evidence, this Court will uphold the district court's determinations so long as there is substantial credible evidence to uphold its findings of fact and conclusions of law. *Bock v. Smith*, 2005 MT 40, ¶ 27, 326 Mont. 123, 107 P.3d 488.

¶27 Here, the court appropriately heard and marshalled the evidence, weighed its credibility, thoroughly and conscientiously considered the best interest factors set forth in § 40-4-212, MCA, and set forth specific findings related to each factor. Specifically, regarding Mother's concern of physical abuse, the court stated:

> There is no evidence of abuse directed at A.H.S. Nick Ransom and [Mother's] testimony established by a preponderance of the evidence that [Father] likely did behave inappropriately and cause [Mother] to reasonably fear injury . . . . The Court has some concern based on [Mother's] testimony about [Father's] anger management. Nevertheless, there is no evidence that [Father] is anything but a patient, safe, and loving parent towards A.H.S. or that he should receive anything less than equal parenting time because of this prior incident.

¶28 After reviewing the record, we find the evidence supports the District Court's findings and conclusions. The court heard testimony from Officer Nick Ransom and Mother that described the domestic dispute that took place between Father and Mother. The court also heard testimony from Kathleen Shea, a licensed social worker, who has been seeing A.H.S. since 2023. Shea testified she had no concerns with either parent's ability to safely parent A.H.S. Accordingly, despite the domestic incident, the court found there was no evidence suggesting either parent was an unsafe, abusive, or neglectful parent. The

16

District Court properly applied the § 40-4-212, MCA, best interest factors to the evidence presented, and we cannot conclude the court erred in ordering the parenting plan that it did.

## CONCLUSION

¶29 Consistent with the requirements and intent of the UCCJEA, the Montana and California Courts appropriately communicated and cooperated exactly as they were supposed to in order to resolve the jurisdictional issue. The record contains substantial credible evidence supporting the jurisdictional findings and conclusions of the Montana Court. As such, we conclude the Montana Court did not err in exercising initial subject matter jurisdiction over the child custody proceeding and continuing jurisdiction.

¶30 Additionally, the District Court did not abuse its discretion by imposing a temporary travel restriction on A.H.S. because it was in A.H.S.'s best interest to have a stable and continuous parenting routine that interstate or international travel would interrupt. Based on Mother's prior less than good faith actions, including absconding with A.H.S. to California, the District Court's decision appropriately protects A.H.S.'s best interests.

¶31 Finally, we find the District Court did not err in its analysis of the best interest factors under § 40-4-212, MCA, as the record evidence supports the court's decision.

¶32 Affirmed.

/S/ INGRID GUSTAFSON

We Concur:

/S/ LAURIE McKINNON
/S/ KATHERINE M BIDEGARAY
/S/ BETH BAKER
/S/ JIM RICE